1999-NMCA-078

982 P.2d 1060

**In the Matter of LARRY K., a Child,**

**No. 19,633.**

Court of Appeals of New Mexico.

May 18, 1999.

Patricia A. Madrid, Attorney General, M. Anne Kelly, Ass't Attorney General, Santa Fe, for appellant.

Phyllis H. Subin, Chief Public Defender, Donna M. Bevacqua, Ass't Appellate Defender, Santa Fe, for appellee.

## OPINION

PICKARD, Chief Judge.

{1} The State appeals the trial court's grant of a jury trial to Child. Because this Court has no jurisdiction to entertain the State's appeal as a writ of error or under an exception to the final judgment rule, we dismiss for lack of jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} On January 13, 1998, the State filed a petition against Child, alleging that he shoplifted a package of beef jerky, contrary to NMSA 1978, § 30–16–20(A)(1) (1987) (shoplifting under $250). On March 9, 1998, Child made a demand for a jury trial. On May 20, 1998, the State moved to strike Child's jury request and filed an amended petition alleging shoplifting under $100, a petty misdemeanor, contrary to Section 30–16–20(B)(1). The alleged value of the shoplifted item was $1.49.

{3} The trial court denied the State's motion to strike the jury demand and granted the State the right to enter an interlocutory appeal of this issue. Instead, two days later, the State filed a notice of appeal from the court's order. This Court initially proposed summary dismissal based on the lack of a final order, and ultimately placed the case on the general calendar for full briefing.

## II. DISCUSSION

■ {4} This Court generally has jurisdiction to review only judgments that finally determine the rights and liabilities of the parties to the underlying controversy. See *Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 238, 824 P.2d 1033, 1040 (1992).

Similarly, an aggrieved party is ordinarily entitled to an immediate appeal of an interlocutory order only if the order practically disposes of the merits of the case. See NMSA 1978, § 39–3–4 (1971); *Sunwest Bank v. Nelson*, 1998–NMSC–012, ¶ 5, 125 N.M. 170, 958 P.2d 740. This final judgment rule reflects our powerful interest in avoiding piecemeal appeals. See *State v. Apodaca*, 1997–NMCA–051, ¶ 16, 123 N.M. 372, 940 P.2d 478. The final judgment rule appears to be incorporated into children's court delinquency proceedings through NMSA 1978, § 32A–1–17(A) (1995), providing for appeals only from "judgment[s]" of the children's court, and Rule 10–230(C) NMRA 1999, providing for appeals from "judgments and dispositions." We have held, however, that the statute governing interlocutory appeals from civil cases and special statutory proceedings, Section 39–3–4, applies to children's court delinquency proceedings. See *In re Doe*, 85 N.M. 691, 692, 516 P.2d 201, 202 (Ct.App. 1973).

■ {5} The appropriate way for the State to have sought this Court's review of its issue would have been through an interlocutory appeal, which the trial court certified in the order denying the State's motion to strike Child's jury demand. However, the State failed to pursue an interlocutory appeal, instead filing a notice of appeal, as one would from a final order. The State gave no explanation for this action. Rather, the State argued in its memorandum in opposition to our proposed summary dismissal, and argues in its brief, that we should overlook this procedural irregularity and treat the State's docketing statement as a petition for a writ of error. For the reasons discussed below, we hold that writ of error and the other appeals as of right that we have recognized in addition to those set forth in NMSA 1978, § 39–3–3 (1972) and from final judgments are not available to the State to circumvent the final order rule in this case.

### 1. Writ of Error or Collateral Order Doctrine

■ {6} The writ of error doctrine is intended to address an extremely limited

class of cases. *See* Rule 12–503 NMRA 1999; *Carrillo v. Rostro,* 114 N.M. 607, 616, 845 P.2d 130, 139 (1992). The purpose of the doctrine is to provide an alternative remedy for situations where the remedy by way of appeal of the final judgment will prove to be inadequate. *See id.* at 617, 845 P.2d at 140.

{7} The State argues that the issue in this case would not be reviewable after trial. This appears to be true: if Child were to win at a jury trial, double jeopardy would preclude any remedy for the State. *See generally State ex rel. Schwartz v. Kennedy,* 120 N.M. 619, 625–26, 904 P.2d 1044, 1050–51 (1995). However, that fact is not determinative. The availability of writs of error, or the collateral order doctrine, as it is referred to in other jurisdictions, is not coextensive with the lack of a remedy. Leaving aside the fact that the State chose not to utilize its available remedy of interlocutory appeal, the writ of error is not available here, both for substantive and procedural reasons.

{8} First, we take note that the grant of a writ of error is clearly discretionary. *See* Rule 12–503(I). In *Carrillo,* our Supreme Court utilized the writ to address whether the defendants were entitled to qualified immunity. *See id.,* 114 N.M. at 609–10, 845 P.2d at 132–33. The cases cited in *Carrillo* for their application of the doctrine primarily address orders regarding absolute or qualified immunity, dismissals, stays, and addition or removal of parties, as well as orders directing payment. *See id.* at 614 nn. 5–6, 845 P.2d at 137 nn. 5–6. These issues primarily share the common quality of addressing " 'an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of . . . essentially legal question[s].' " *Id.* at 615, 845 P.2d at 138 (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

{9} The grant of a jury trial to Child is not of the same type as the forementioned issues. It is not clear that the burden upon the State in a jury trial is significantly more onerous than in a bench trial. Our willingness to extend this doctrine to the grant of a jury trial is diminished further by the facts of this case. The trial court, while stating no reasons in its formal order for the denial of the State's motion, found that the State should not be able to circumvent Child's right to a jury by limiting exposure during adjudication. We glean from this order that the trial court seems to have been concerned about the State's motives in amending the petition and moving to strike Child's jury demand. However, in its letter decision, the trial court extensively analyzed a child's general right to a jury trial in a delinquency case. This rationale was not carried forward in the order, leaving us at somewhat of a loss to pinpoint precisely what entitlement the State, as petitioner, is seeking to vindicate through a writ of error.

{10} The State's docketing statement also fails as a petition for writ of error for procedural reasons. Under Rule 12–503(E), a petition for writ of error requires a statement of how the order conclusively determines the question, resolves an important issue separate from the merits, and would be effectively unreviewable on appeal from a final judgment. The State's docketing statement does not address any of these elements. The State also contends that the docketing statement was timely filed as a petition for writ of error. However, to agree with this contention would be to permit the State to flout the substantive portions of our rules of appellate procedure. The State did not comply with those substantive portions of the writ of error rule until long after the time had passed. We are disinclined to encourage the State's noncompliance with our rules.

## 2. Doctrine of Practical Finality

{11} We have, under limited circumstances, reviewed an otherwise non-final order pursuant to the doctrine of practical finality. *See State v. Ahasteen,* 1998–NMCA–158, 126 N.M. 238, 968 P.2d 328. For example, in *Ahasteen,* we dealt with the state's appeal of the trial court's decision to remand to magistrate court a case that had been filed in magistrate court but refiled in district court. *See id.* ¶ 1. The state was exercising its broad prosecutorial discretion in choosing where to file the case. *See id.* ¶ 22. Despite allegations of bad faith by the

defendant, the state presented legitimate reasons for refiling the case in district court. *See id.* ¶ 23. Accordingly, we reviewed the state's claims under the doctrine of practical finality. *See id.* ¶ 13. It is important to note, though, that the decision reviewed in *Ahasteen,* as well as the decisions in the cases on which that case relied for the practical-finality exception, were all concluding decisions of a particular tribunal—mostly orders remanding the case to a lower tribunal. *See id.* ¶¶ 11–13. In other words, those decisions were not merely one of many routine decisions made during the course of proceedings in one tribunal, such as a ruling on an evidentiary issue or the ruling on a motion to strike a jury demand.

{12} *Ahasteen* is inapplicable on at least two grounds. First, charging decisions such as those at issue in *Ahasteen* are the essence of the protections of prosecutorial discretion, whereas here the question of whether the merits are presented to a jury or a judge is a considerably less protected interest for the State. Nothing in the court's order has circumscribed the prosecutor's discretion as to what to charge, in what way, or where. Second, every decision adverse to the State along the course of a criminal trial could implicate the doctrine of practical finality since, due to double jeopardy concerns, the State's right to appeal is extremely limited. Not to limit the doctrine of practical finality would allow the exception to fast swallow the rule. Under these circumstances, therefore, we hold that the doctrine of practical finality does not apply.

3. State Constitutional Right to Appeal

■ {13} We have also permitted a state constitutional exception to the final judgment rule. The New Mexico Constitution provides that "an aggrieved party shall have an absolute right to one appeal." N.M. Const. art. VI, § 2. We have utilized this language to permit appeal of an otherwise non-final order. *See Apodaca,* 1997–NMCA–051, ¶ 13, 123 N.M. 372, 940 P.2d 478; *State v. Armijo,* 118 N.M. 802, 805, 887 P.2d 1269, 1272 (Ct.App.1994).

{14} In *Armijo,* the State appealed the trial court's order quashing the indictment against the defendant and disqualifying the office of the state Attorney General from prosecuting the case. *See id.,* 118 N.M. at 804, 887 P.2d at 1271. We held that preventing the attorney general from performing a duty required by law was a matter of "grave importance" that gave rise to a constitutional right to appeal. *Id.* at 806, 887 P.2d at 1273. We also noted that the State does not always have a right to appeal when it is aggrieved by the trial court's ruling, but rather the right to appeal is only applicable where the interest is especially strong. *Id.* at 805, 887 P.2d at 1272. In *Apodaca,* we reiterated the fact that the implicated interest must be "of the greatest importance" to justify the constitutional right to appeal exception to the final judgment rule. *Apodaca,* 1997–NMCA–051, ¶ 16, 123 N.M. 372, 940 P.2d 478.

{15} We hold that the State's interest in this case is not compelling enough to justify an exception to the final judgment rule. We are unaware of any express constitutional, statutory, or regulatory right in the State to secure a bench trial, rather than a jury trial. This is particularly true under the facts of this case, where Child had, and claimed, his right to a jury under the original charge against him. We see no great prejudice to the State that would result from requiring the jury trial. At most, the State's interest in this case is to have trial courts make correct decisions on the law based on the right rationales. While that interest is undoubtedly important, it is nonetheless subject to the constraints of proper procedure. *See, e.g.,* Rule 12–216 NMRA 1999 (preservation of issues). Also, that interest, if rising to a sufficient level of importance in a particular case, is protected by the interlocutory-appeal procedure. Perhaps the outcome of this case would have been different if the State had followed the appropriate procedures for an interlocutory appeal, which it began. Nonetheless, under the present circumstances, this Court is without jurisdiction to address the merits of the State's appeal.

**III. CONCLUSION**

{16} We dismiss this case for lack of jurisdiction. As indicated above, under the facts of this case, the grant of a jury trial

does not present an important enough issue to justify the expansion of the existing exceptions to the final judgment rule.

{17}   **IT IS SO ORDERED.**

DONNELLY and BOSSON, JJ., concur.