SUTIN, Judge (specially concurring). {37} One difficulty in deciding the issues in this case is that the case was not particularly well tried, is not particularly well presented on appeal, and is convoluted. But decide the issues we must. Schneider’s Status {38} I am not sold on the majority opinion’s need to emphasize that Schneider was not a party. Indications are that she was not a party when she filed a motion to quash the subpoenas under Rule 1-045(C)(3) NMRA, although, in essence, it would seem that she became a party to the action in a limited manner, namely, to obtain an order quashing the subpoenas. The majority Opinion in fact determines (erroneously in my view) that Schneider had a direct appeal to this Court in addition to a right to obtain review through a writ of error. The appellate rules call a person who files an appeal, and for that matter a person who seeks a writ of error, a “party.” See Rule 12-202(B)(1) NMRA; Rule 12-503(D), (E) NMRA. The direct appeal determination seems inconsistent with the position that Schneider was not a party, given that the Opinion indicates Schneider was a person sufficiently aggrieved by the court’s order allowing the subpoenas to directly, in the action, obtain relief from the district court’s order — certainly indicia of at least some sort of party status. All this said, however, Schneider’s limited status in the action does not adversely affect her procedural rights. Writ of Error {39} While I am persuaded that a writ of error should be available to Schneider in this case, I do not buy into the majority Opinion’s analyses of King and Pino in reaching the Opinion’s conclusions that those cases are not applicable. I simply do not think that, under the particular circumstances of this case, Schneider was required to either seek an interlocutory appeal or to undergo contempt for refusing to comply with the subpoena. And with no writ of error opportunity for Schneider, once the Department received its subpoena, Schneider would be left with no way to seek relief in this Court before the documents would enter the public arena. Further, because that would be a finality giving rise under the circumstances here to the right to pursue a writ of error, I see no reason to reach out, expand, and apply the doctrine of practical finality as indicated in the majority Opinion. See In re Larry K., 1999-NMCA-078, ¶¶ 11-12, 127 N.M. 461, 982 P.2d 1060 (indicating that decisions applying practical finality “were all concluding decisions of a particular tribunal — mostly orders remanding the case to a lower tribunal” and stating that “[n]ot to limit the doctrine of practical finality would allow the exception to fast swallow the rule”). Privilege {40} Section 7-1-4.2 is entitled “New Mexico taxpayer bill of rights.” It starts out: “The rights afforded New Mexico taxpayers during the assessment, collection},] and enforcement of any tax administered by the department as set forth in the Tax Administration Act include . . . .” Id. The applicable Subsection is 4.2(H), which reads, “the right to have the taxpayer’s tax information kept confidential unless otherwise specified by law, in accordance with Section 7-1-8}.]” Section 7-1-8 is titled “[confidentiality of returns and other information.” Section 7-1-8(A) reads: “It is unlawful for any person other than the taxpayer to reveal to any other person the taxpayer’s return or return information, except as provided in Sections 7-1-8.1 through 7-1-8.10 NMSA 1978.” {41} As I understand the majority Opinion, the incomplete first sentence in Section 7-1-4.2 is not to be read to provide confidentiality only if related to an administrative proceeding involving assessment, collection, or enforcement. Instead it is to be read to provide confidentiality as to documents that have been submitted to the tax authorities in an administrative proceeding. The language arguably can be read either way. The latter interpretation is not unreasonable, given that one would think the Legislature intended to protect taxpayers during, as well as after, administrative proceedings. The latter interpretation would allow a conclusion that the confidentiality provided in S ection 7-1 -4.2 through Subsection 4.2(H), yet subject to Section 7-1-8, is a privilege that can be enforced in Rule 11-502. {42} Then, assuming that the confidentiality provided in Section 7-1 -4.2(H) is a privilege that can be enforced as such in Rule 11-502, the question remains whether Schneider has a right not to produce pursuant to the subpoena served on her, as well as a right to preclude the Department from producing or otherwise disclosing pursuant to the subpoena served on it. One can arguably interpret Sections 7-1-4.2(H) and 7-l-8(A) to relate only to production by the Department, given that these sections are in the Tax Administration Act, appear to relate only to administrative proceedings, and Section 7-1-8 exclusively deals with disclosure of information or production of documents by the Department. One might arguably interpret these sections, as I think the majority Opinion interprets them, to relate to production by either or both the taxpayer and the Department. The sections can be read either way. The majority Opinion’s interpretation is not unreasonable, given a common sense view that if the confidentiality precludes the Department from revelation and production, then why should it not also protect the taxpayer from having to reveal or produce what is in the taxpayer’s possession. Why should a distinction be made? {43} Nothing is all that clear here. The majority Opinion’s interpretations and rationales do not flow from plain language. Furthermore, privileges are to be construed narrowly, and the requirements for establishing the privilege are strictly enforced because privileges are viewed as being in derogation of the search for the truth. See Univ. of Penn. v. EEOC, 493 U.S. 182, 189 (1990); Scott v. City of Peoria, 280 F.R.D. 419, 422 (C.D. Ill. 2011); Albuquerque Rape Crisis Ctr., 2005-NMSC-032, ¶ 18. Nevertheless, I agree with the view that Sections 7-1-4.2(H) and 7-l-8(A) read together constitute a privilege that can be enforced by Rule 11-502. And I also agree with the view that these sections provide confidentiality that protects Schneider in regard to both subpoenas and, therefore, gives rise to a privilege under Rule 11 -5 02 in regard to the subject of both subpoenas. I am also persuaded that Schneider has not waived that protection. {44} But the question then arises, is what the majority Opinion enforces an absolute or unqualified confidentiality right and privilege for persons who file returns? That is, in all civil actions in the district court (except for the limited exceptions in Section 7-1-8.4) does every party who is faced with a discovery order and every non-party faced with a subpoena have a privilege not to produce and to preclude production by others, no matter what, unless the confidentiality is waived? It appears to me that this is the result of the Opinion as it stands. And that concerns me. I respectfully doubt the wisdom of construing the statutes involved here and Rule 11-502 in a virtually unconditional manner. Care should be taken in deciding a case in a way that creates an absolute or unqualified privilege. {45} One might argue that the Legislature thought about the issue and carefully spelled out in Sections 7-1-8.1 through 7-1-8.10 what the limitations and conditions should be in regard to court proceedings. I cannot accept that argument under the circumstances here. As I discuss later in this concurring opinion, I am persuaded that the privilege in Rule 11-502 ought only to apply in this case at this stage of the proceeding. Furthermore, I am not convinced that this Court, or the trial court, cannot or should not have the opportunity later in this case to limit or qualify or relax the privilege. Rule 11-502 is a judicially created rule, and I see no reason why its reach cannot be restrained if the circumstances require it. We are not bound to adhere to statutory confidentiality requirements and exceptions in regard to evidentiary privileges. See Albuquerque Rape Crisis Ctr., 2005-NMSC-032, ¶ 24 (Bosson, C.L, dissenting) (“[Ijthas been settled law that this Court, and only this Court, may create a testimonial privilege. Unless authorized by the Constitution, the Legislature may not decide who may give testimony in a court of law. The decision to create a testimonial privilege remains a core function of the judiciary as a separate and equal branch of government.”). Thus, I am not persuaded that application of the statutes and the rule at this stage of the proceeding should be read to say that, on remand, the privilege cannot still be addressed and be judicially relaxed in later proceedings. {46} The majority Opinion emphasizes that Plaintiff had not sought Schneider’s tax information. That is not the question to ask. The question is whether Plaintiff intended to provide testimony or documents relating to Schneider’s tax information and whether allowing that evidence would be inadmissible, unfair, or prejudicial to Defendants if Defendants were unable to obtain the tax information on which Plaintiff relied. In my view, the subpoenas should neither have been sought nor allowed in the district court before it was ascertained and made clear in pretrial proceedings (1) what Plaintiff was specifically contending in regard to the role that Schneider’s tax information has and the relevancy of that information to his charge of retaliation, and (2) what testimony and documentary evidence Plaintiff intended to present in order to prove retaliation. If the merits of the retaliation claim would reasonably anticipate consideration of Schneider’s tax returns or any related protected tax information, based either on testimony or documentary evidence that Plaintiff intended to present as evidence at trial, that would be the time to test whether subpoenas should be issued and whether the privilege applied, or whether Plaintiff should even be allowed to testify. It could turn out that Plaintiff’s tendered testimony or documentation would either be inadmissible or make any subpoena unnecessary. Depending on whether Plaintiff were allowed to testify or produce documents bearing on the tax information, it might well be in the court’s discretion to fashion a subpoena for production by the Department or Schneider (or both) of the tax information for review by the court in camera under a protective order as was entered by the court in this case. That protective order entered by the court appears to carefully and satisfactorily protect Schneider’s privacy while at the same time following the clear policy to bring all relevant facts before the trier of fact. {47} “The need to develop all relevant facts in the adversary system is both fundamental and comprehensive.” United States v. Nixon, 418 U.S. 683, 709 (1974). In the federal system, “Rule 501 manifests a congressional desire not to freeze the law of privilege but rather to provide the courts with flexibility to develop rules of privilege on a case-by-case basis[.]” Univ. of Penn., 493 U.S. at 189 (internal quotation marks and citation omitted). The policy should be no different in the New Mexico courts. {48} As one court has put it: [I]n deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises. The court should weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case. Mem'l Hosp. for McHenry Cnty. v. Shadur, 664 F.2d 1058, 1061-62 (7th Cir. 1981) (internal quotation marks and citation omitted). As I indicated earlier, courts in New Mexico do not have to follow or enforce a legislatively created privilege. See Albuquerque Rape Crisis Ctr., 2005-NMSC-032, ¶ 24 (Bosson, C J., dissenting). A court can refuse to follow or enforce a legislative privilege that is inconsistent with a rule. Id. ¶ 38. Here, there is no inconsistency. The rule actually indicates that, with regard to tax returns, items that are compelled by a law will be considered privileged under the rule. Still, in my view, this Court can determine that in certain circumstances the facts permit, if not require, a limitation or relaxation or some protective procedure short of an absolute or unqualified privilege. {49} I note that the California case cited by the majority Opinion, Webb, 319 P.2d 621, while appearing to support the approach in the majority Opinion, may not be all that helpful. The court later, in Schnabel, 854 P.2d at 1127, held that the privilege is not absolute. Also, the statute in Webb reads differently than does Section 7-l-4.2(H). {50} In sum, I agree with reversing the district court’s order allowing the subpoenas and with quashing the subpoenas at this time, but leaving open the possibility that on remand it may be appropriate to issue the subpoenas and relax the privilege together with use of an appropriate protective order. JONATHAN B. SUTIN, Judge